UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| STEPHEN SHEFSKY, et al., | Case No. 2:25-cv-358-ART-MDC |
| Plaintiffs, | ORDER ON MOTION TO DISMISS |
| v. | (ECF No. 49) |
| WYNN LAS VEGAS, LLC, et al., | |
| Defendants. | |

Stephen Shefsky and his corporation, James Bay Resources, Ltd., sue Wynn Las Vegas, LLC and Wynn Resorts Limited (collectively, "Wynn") for their alleged involvement in a nonparty's Ponzi scheme. Plaintiffs, who were victims of the scheme, allege that Wynn improperly turned a blind eye to the nonparty's criminal history and criminal conduct. (ECF No. 45.) Defendants move to dismiss for failure to state a claim. (ECF No. 49.) The Court now grants the motion in part and denies it in part.

## I.      Factual Background

The following facts are taken from Plaintiffs' First Amended Complaint. (ECF No. 45.)

David Bunevacz, a former Olympic athlete with a prior conviction for securities fraud, set up a series of business entities that he claimed were involved in the cannabis industry. Bunevacz then solicited tens of millions of dollars from over a hundred investors, claiming that he would invest the money in the businesses. Instead, he misappropriated the funds. A federal criminal investigation alleged that between April 2015 and June 2019, Bunevacz spent over $8 million of investor funds at Las Vegas casinos. Between January 2018 and June 2019, Bunevacz lost approximately $3,755,050 at the Wynn Las Vegas.

1

Stephen Shefsky and James Bay were two of the defrauded investors. In November 2018, Bunevacz and Wynn Las Vegas offered Shefsky a free room and wined and dined him to solicit investments from himself and his corporation. A week after Shefsky's stay at Wynn, James Bay made Bunevacz an ostensible loan of $1,500,000 and Shefsky made a loan of $100,000 on or around November 20, 2018. Over the subsequent months, James Bay and Shefsky invested another $3 million dollars in Bunevacz's companies. The so-called loans were made directly to a Wells Fargo account that Plaintiffs allege was used to make "front money" deposits at Wynn.

Wynn's high roller treatment of Bunevacz convinced Shefsky that Bunevacz was a legitimate businessman. In particular, Wynn gave Bunevacz complimentary suites during his stays, golf trips and social events, a designated casino host to cater to Bunevacz's needs, and expensive shopping sprees for Bunevacz's wife and other family members. Plaintiffs allege that "[a]bsent this treatment, Plaintiffs would not have invested in Bunevacz and his Ponzi scheme." (ECF No. 45 ¶ 56.) Plaintiffs further allege that Wynn Resorts Limited is Wynn Las Vegas's parent company, and responsible for ensuring that Wynn Las Vegas conducted proper investigations into patrons' source of funds and wealth.

Plaintiffs further allege that Wynn did not verify Bunevacz's source of funds, brushed aside Bunevacz's prior felony conviction for financial crimes, and otherwise failed to investigate him as vigorously as it may have investigated other gaming patrons because Bunevacz spent a lot of money at Wynn and paid up front. Had Wynn adequately investigated Bunevacz, Wynn would have reported him to federal authorities earlier or banned him from gambling with them earlier.

Plaintiffs allege that Wynn's failure to investigate Bunevacz constitutes negligence and negligence per se, unjust enrichment, and receipt of stolen funds under NRS 41.580.

## II.        Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678–79.

If the Court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.       Discussion

#### A. Negligence and Negligence Per Se

Defendants argue that Plaintiffs' negligence and negligence per se claims are barred by the economic loss doctrine. "[T]he economic loss doctrine cuts off tort liability when no personal injury or property damage occurred," with certain exceptions not applicable here. *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 90 (Nev. 2009). The doctrine's purpose is "to shield [defendants] from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Loc. Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Loc. No. 226 v. Stern,* 651 P.2d 637, 638 (1982).

Here the economic loss doctrine bars Plaintiffs' negligence claim because Plaintiffs do not allege personal injury or property damage. Plaintiffs allege that Defendants facilitated Bunevacz's theft of their money only. While Plaintiffs argue that stolen money is property damage rather than economic harm, the Supreme Court of Nevada treats stolen money as an economic loss that cannot support tort liability on its own. *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety,* 110 P.3d 30, 38, 51 (2005), *abrogated by Buzz Stew, LLC v. City of N. Las Vegas,* 181 P.3d 670 (2008). Plaintiffs also argue that the economic loss doctrine only bars suit where contract damages would be a more appropriate vehicle. But the state Supreme Court has repeatedly applied the doctrine in cases where there was no contract between plaintiffs and defendants. *Id.*; *Stern,* 651 P.2d at 638.

Because Plaintiffs plead no injury but the theft of money, Plaintiffs have not sufficiently pleaded their claims for either negligence or negligence per se. *See Insco v. Aetna Health & Life Ins. Co.*, 673 F. Supp. 2d 1180, 1191 (D. Nev. 2009) ("[N]egligence per se is not a separate cause of action but a doctrine whereby a court will consider the negligence elements of duty and breach satisfied as a

matter of law[.]" (citing *Ashwood v. Clark County*, 930 P.2d 740, 743-44 (Nev. 1997))); *Sadler v. PacifiCare of Nev.*, 340 P.3d 1264, 1268, 1267 n.2 (2014) (stating that the economic loss doctrine is "closely related to the injury requirement" of negligence, which "would apply to both [negligence and negligence per se] equally.") Since the economic loss doctrine is sufficient to dismiss this claim, the Court does not address the rest of Defendants' arguments going to negligence per se.

### B. Unjust Enrichment

Plaintiffs have brought a cause of action for unjust enrichment, seeking disgorgement or restitution of the money that Wynn improperly accepted from Bunevacz. (ECF No. 45 ¶ 91.) Defendants argue that Plaintiffs have insufficiently pleaded their unjust enrichment claim because they have not pleaded that they lack an adequate remedy at law.

Plaintiffs in diversity cases "must show that they lack an adequate remedy at law for their unjust enrichment claim to proceed." *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1195–98 (D. Nev. 2022). Equitable relief in a federal court is…. subject to restrictions," including that "a plain, adequate, and complete remedy at law must be wanting." *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 105-06 (1945). Applying this principle, the Ninth Circuit has held that a federal court sitting in diversity must require plaintiffs to demonstrate that no adequate legal remedy exists at law before they can recover in equity. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). District courts in this circuit have applied *Sonner* to hold that unjust enrichment claims fail on a motion to dismiss if plaintiffs do not complain that they lack an adequate remedy at law. *Smallman*, 638 F. Supp. 3d at 1195–98; *Forrett v. Gourmet Nut, Inc.*, No. 22-cv-02405, 634 F.Supp.3d 761, 768 (N.D. Cal. Oct. 11, 2022); *see also Audrey Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974, 2021 WL 819159, at *4

(C.D. Cal. Feb. 10, 2021) (finding that *Sonner*'s holding applies to all claims for equitable relief).

Plaintiffs argue that according to the Nevada Supreme Court, their unjust enrichment claim is legal rather than equitable because they seek money damages. However, "the characterization of [a] state-created claim as legal or equitable... must be made by recourse to federal law" *Simler v. Conner*, 372 U.S. 221, 222 (1963). Furthermore, state law cannot enlarge federal equitable powers. "State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts." *York*, 326 U.S. at 106; *see also Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497–98 (1923) ("That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear. ... The federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in state court."). Applying the state's characterization of a claim as legal rather than equitable risks doing an end run around the limitations on federal equitable jurisdiction.

Plaintiffs have not adequately pleaded a cause of action for unjust enrichment because similarly to the plaintiff in *Sonner*, they have not alleged the inadequacy of remedies at law. To the contrary, their other claims request legal damages that would address the same harms that they also seek to redress in equity. *Sonner*, 971 F.3d at 844.

### C. Receipt of Stolen Funds, NRS 41.580

Plaintiffs sue under NRS 41.580, which provides victims of property crimes with a civil cause of action against third party holders of their property. "If property has been taken from its owner by ...any[] offense that is a crime against property and another person buys, receives, possesses or withholds the property under circumstances that make such conduct a violation of subsection 1 of NRS

205.275, the owner of the property may bring a civil action against" that third party and recover treble damages. NRS 41.580. The reference to NRS 205.275(1) provides a scienter requirement: with certain exceptions, the third party is liable if they hold the property while "(a) [k]nowing that it is stolen property; or (b) [u]nder such circumstances as should have caused a reasonable person to know that it is stolen property." Wynn argues that Plaintiffs have not sufficiently pleaded a cause of action for receipt of stolen funds under NRS 41.580 because they have not pleaded that Wynn knew or should have known that Bunevacz's money was stolen. NRS 205.275(1).

Plaintiffs have pleaded that Bunevacz was previously convicted for financial crimes, that he spent over $8 million at Las Vegas casinos and at least $3,755,050 at Wynn specifically, that Wynn hired compliance executives and officers and that they reviewed investigatory material about patrons and determine their fitness to gamble, that Wynn failed to conduct proper due diligence on Bunevacz and never verified the source of his funds, and that Wynn turned a blind eye to his conduct to earn greater profits. (ECF No. 45.) Taking all these allegations as true, as is required at the motion to dismiss stage, Plaintiffs have adequately pleaded that Wynn should have known that Bunevacz's money was stolen. Contrary to Defendants' arguments, this cause of action is not merely negligence per se in different clothing. Plaintiffs' theory does not depend on establishing that Defendants violated of the Bank Secrecy Act or other financial rules. Under the facts alleged in the complaint, it is "plausible on its face" that given Bunevacz's history and characteristics, and Defendants' practice of conducting due diligence on their customers, they should have discovered that Bunevacz was spending stolen money. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This inference does not depend on whether Defendants had a

legal obligation to conduct due diligence, or what the source of that obligation was.

**IV.      Conclusion**

Defendants' motion to dismiss (ECF No. 49) is therefore GRANTED IN PART AND DENIED IN PART.

Plaintiffs' claims of negligence and unjust enrichment are dismissed. The motion is denied with respect to Plaintiffs' claim of receipt of stolen funds, NRS 41.580.

DATED: June 2, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE